**In re C.T. and G.T.F., Both Minors,**

**Appeal of C.T., Biological Father, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2007.
Filed March 7, 2008.

Shanese I. Johnson, Philadelphia, for appellant.

Valerie B. Jones and Lester R. Zipris, Philadelphia, for appellees.

Nicolette Burgess-Bolden, Philadelphia, for Dept. of Human Services, Participating Party.

Charles A. Rosenbaum, Philadelphia, for Mother of C.T. and G.T.F., Participating Party.

BEFORE: STEVENS, ORIE MELVIN and COLVILLE *, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, C.T. (Father), appeals from the trial court's order terminating his parental rights to his minor children. After careful review, we affirm.

¶ 2 The trial court aptly summarized the factual and procedural background of this case involving the two children (who are presently ages 7 and 6) as follows.

The family originally became known to [Philadelphia Department of Human Services, Children and Youth Division, (DHS)] on May 16, 2005, when DHS received a referral from the Women Against Abuse Shelter where Mother was residing with the Children. The referral recommended that the family be assessed for Family Preservation Services because of concerns about Mother's parenting skills.

On May 20, 2005, an initial Family Service Plan meeting was held. Mother attended the meeting and signed the FSP. The goal of the FSP was to "stabilize the family and prevent placement." * * * On July 18, 2005, Mother was discharged from the Women Against Abuse Shelter for not complying with the shelter's rules. DHS assisted Mother in obtaining emergency shelter.... On August 5, 2005, DHS obtained a Restraining Order * * * [and] the Children were placed in a foster home. [Soon thereafter the court] adjudicated the Children dependent. At the time of the hearing, Father's whereabouts were unknown. The Children have remained committed to DHS and have lived in the current foster placement since that date.[1]

On September 5, 2005, the first post-adjudicatory FSP meeting was held. * * * Father was not identified on the FSP and no objectives were identified for him as his whereabouts were unknown. On January 18, 2006, a permanency review hearing was held [at which] Father was represented by counsel, but was not present at the hearing as his whereabouts were still unknown. At the conclusion of the hearing, the Court ordered that the Children remain as committed to DHS' care.

On May 5, 2006, DHS received a Child Protective Services ("CPS") report alleging that on April 20, 2006, Mother gave birth to an infant and left the child

---

* Retired Senior Judge assigned to the Superior Court.

1. The children are developmentally delayed and have been provided with early intervention services.

in the toilet for two hours. * * * The child asphyxiated. The coroner's report stated that if the baby was removed from the toilet, it would have lived and ruled the death a homicide. Father "admitted to knowing [Mother] gave birth to the child, and then leaving the baby in the toilet for over a half an hour before calling the paramedics [to assist Mother], who was still not feeling well." * * * Mother was incarcerated and charged with murder and involuntary manslaughter. Father was considered a perpetrator by omission in the death of the baby.

On May 31, 2006, the second post-adjudicatory FSP meeting was held. Father was presented, participated and signed the FSP. Although Mother was aware of the FSP meeting, she was incarcerated and did not participate in the meeting.

In addition to the objectives identified in the previous FSP, the revised FSP included suitable housing as a goal. The FSP required Father to locate adequate housing by October 21, 2006.

On June 21, 2006, a permanency review hearing was held before the Court. Mother was not present, but was represented by counsel. Father was present and represented by counsel. The Court referred Father to the Clinical Evaluation Unit (SEU) for a forthwith drug screen and a dual diagnosis assessment. At the conclusion of the hearing, the Court ordered the Children to remain as committed to DHS' care. Since Father's whereabouts were now known to DHS, the Court granted biweekly supervised visitation to Father.

On November 8, 2006, another permanency review hearing was held before the Court. Neither parent was present, although both were represented by their court-appointed attorneys. The Court noted that Father had rendered a positive drug screen and that he had failed to appear for his appointments at Behavioral Health Services and the Achieving Reunification Center, and that, other than visitation, he had not complied with his FSP objectives.

DHS requested that the next hearing would be a Goal Change and Involuntary Termination of Parental Rights hearing. The Court ordered the Children to remain as committed to DHS' care.

On September 26, 2006, a third post-adjudicatory FSP meeting was held. Father attended. The FSP goal was changed to "adoption" during the meeting. In the Permanency Plan, it was noted that "Mother is incarcerated, [F]ather has maintained visitation however, he has not located stable housing, [is] unemployed and tested positive for crack cocaine."

Trial Court Opinion, 6/25/07, at 2–5 (citations to record omitted). DHS subsequently filed a petition to terminate the parental rights of both Father and Mother. The trial court conducted a hearing on April 4, 2007, which Father did not attend although he was again represented by counsel.[2] Following the hearing, the trial court terminated Mother's and Father's parental rights, concluding that DHS had established clear and convincing evidence of the statutory grounds for termination pursuant to the Adoption Act under Sections 2511(a)(1), (2), (5), and (8) and that the best interests of the children would be served by termination as required by Section 2511(b).

---

2. An agency worker testified that Father was aware of and planned to attend the termination hearing. N.T. Hearing, 4/4/07, at 20–

22. Father does not assert on appeal that he was not properly notified of the hearing or that he was unable to attend.

¶ 3 Father filed a timely appeal. As directed, he complied with the order requiring him to file a concise statement pursuant to Pa.R.A.P. 1925. The trial court responded with a comprehensive opinion addressing the issues raised therein. On appeal to this Court, counsel for Father filed an *Anders*[3] brief and a request to withdraw as counsel. This Court denied the petition to withdraw and remanded, directing counsel to file, within 30 days, either an advocate's brief or a proper *Anders* brief. Counsel subsequently filed an advocate's brief, and this Court is now able to address the merits of Father's claim which he states as follows: "Did the [trial court] err in terminating Appellant's parental rights when the evidence showed that there was a parent-child bond between Appellant and each child, which was not in the best interests of the child to be broken?" Appellant's brief at 3.[4]

¶ 4 Our standard of review regarding orders terminating parental rights is well settled.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa.Super.2005), *appeal denied*, 586 Pa. 751, 892 A.2d 824 (2005). In termination cases, the burden is upon the agency to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid.

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super.2003). "The justification behind termination of parental rights is to prevent children from growing up in an indefinite state of limbo, without parents capable of caring for them, and at the same time unavailable for adoption by loving and willing foster families...." *In re H.S.W.C.-B.*, 575 Pa. 473, 477, 836 A.2d 908, 910–11 (2003)(internal citation omitted).

¶ 5 After the trial court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the child. *See In re C.A.W.*, 453 Pa.Super. 277, 683 A.2d 911, 917–18 (1996) (stating "judicial inquiry is to be centered on the best interests of the [c]hildren ... but only after ... incapacity has been proven by clear and convincing evidence."), *appeal denied*, 548 Pa. 631, 694 A.2d 619 (1996) (citations omitted). "Section 2511(b) centers judicial inquiry upon the welfare of the child rather

---

3. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

4. We note that the termination of Mother's parental rights is not at issue.

than the fault of the parent." *In re A.R.*, 837 A.2d 560, 565 (Pa.Super.2003). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child." *In re R.J.S.*, 901 A.2d 502, 508 (Pa.Super.2006).

¶ 6 Requests by an agency to have parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides in pertinent part as follows:

§ 2511. **Grounds for involuntary termination**

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an Agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

¶ 7 Although Father does not present any argument that the statutory basis for termination has not been established, we have carefully reviewed the record in this matter and agree with the trial court that DHS met its burden of proving grounds for termination under Section 2511(a)(2) by clear and convincing evidence. We need not consider the remaining subsections since "we need only agree with [the trial court's] decision as to any

one subsection in order to affirm the termination of parental rights." *In Re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*) (citations omitted), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

¶ 8 The argument section of Father's brief focuses on Section 2511(b), as he contends that the trial court failed to make the requisite inquiry into "the extent of the bond between him and the children and the effect a termination [sic] would have on the children." Appellant's brief at 10. We disagree.

¶ 9 The trial court observed that Father had had no contact with the children for the first 10 months of their commitment to DHS and that Father's supervised visitation with them once his whereabouts were ascertained was limited to 20 or fewer occasions by the time of the termination hearing. Trial Court Opinion, 6/25/07, at 11. Father attempted no contact with the children outside of those supervised visits. *Id.* In assessing whether Father and the children shared a bond and the effect of termination on any such bond, the trial court explained that, "[a] scrupulous reading of the record and review of evidence does not yield any suggestion of a 'strong' bond, or of any bond," and that Father had not made bonding with his children a priority. *Id.* at 15–16. The trial court further found persuasive the following reasoning set forth in *J.L.C., supra*, wherein the father made an argument similar to that in the present case:

It is clear from the limited involvement Father had with the children that he did not bond with the children *in the way a parent should bond with his or her children.* * * * Being a parent means assuming responsibility so that a real bond develops, not just having a casual relationship with one's children. Children

often know, love, and sometimes have an enjoyable time with parents who have little to do with their upbringing, and even with parents who physically and mentally abuse them. The key is whether a bond has developed.

*Id.* at 1249 (emphasis in original).

¶ 10 The mere fact that Father participated in supervised visits with his children at a McDonald's restaurant every other week for some time period does not demonstrate the existence of a parental bond, particularly where, as here, no additional contact was even attempted between those visits.[5] Moreover, as the trial court further observed, the absence of a true bond between Father and the children contrasted sharply with the testimony regarding their strong relationship with the family with whom they have resided and where they are thriving in a nurturing environment. Trial Court Opinion, 6/25/07, at 15–16.

¶ 11 Unfortunately for Father, his unsubstantiated declaration in his brief that there exists a "strong bond between Father and children" simply cannot suffice as evidence of such. *See Warfield v. Warfield*, 815 A.2d 1073, 1076 n. 4 (Pa.Super.2003) (reiterating principle that unsubstantiated assertions in a party's brief do not constitute record evidence). Contrary to Father's contentions, we find that the trial court properly considered the existence of any bond between him and the children as well as the effect of its termination on the children's best interests. Accordingly, because competent evidence exists in the record to support the trial court's conclusion, its order must be affirmed. *In re J.L.C., supra*, at 1249 (reasoning that, "[w]ere the facts found by the trial judge to be those stated in Father's

---

**5.** Neither does the absence of any allegations of abuse or neglect during those visits, *see*

Appellant's brief at 10, evidence a parent-child relationship.

brief, the result might be different," but since record supported the trial court's conclusions, the order of termination must be affirmed); *In re L.M.*, 923 A.2d 505, 512 (Pa.Super.2007) (affirming termination where "[t]he trial court found little if any parent-child bond existed between Mother and [child], that Mother had not made the establishment of a bond with [child] a priority, that Mother could not now or in the foreseeable future provide comfort, security, and stability to [child]" such that adoption was in the child's best interests).

¶ 12 Order affirmed.

¶ 13 COLVILLE, J., files a Concurring Opinion.

## CONCURRING OPINION BY COLVILLE, J.:

¶ 1 I concur in the result reached by the Majority Opinion. More specifically, I agree the trial court considered the bond between Father and the Children and that DHS presented sufficient circumstantial evidence to support a conclusion that Father and the Children do not have a significant bond. I note, however, that Father did not have a duty to demonstrate the existence of a bond with the Children. *Compare* Majority Opinion at 783–84 ("The mere fact that Father participated in supervised visits with his children at McDonald's restaurant every other week for some time period does not demonstrate the existence of a bond ....") *with In re J.A.S.*, 820 A.2d 774, 782 (Pa.Super.2003) ("We find CYF satisfied its burden of proving by clear and convincing evidence that ... the needs and welfare of the child are best served by termination.").