J-S01002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| In the Interest of: K.N.H. a/k/a K.H., a Minor, | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.K.D. a/k/a S.G. a/k/a S.K.G. a/k/a S.D., a Mother, | : : | No. 1724 EDA 2015 |

Appeal from the Order May 11, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0000712-2014;
CP-51-DP-0001129-2013; FID: 51-FN-002207-2013

BEFORE: GANTMAN, P.J., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JANUARY 28, 2016**

S.K.D. a/k/a S.G. a/k/a S.K.G. a/k/a S.D. ("Mother") appeals from the

Order granting the Petition filed by the Department of Human Services

("DHS") to involuntarily terminate her parental rights to her minor child,

K.N.H. a/k/a K.H. ("Child"), a daughter born in August 2011, pursuant to 23

Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court aptly summarized the factual and procedural history of

this case, which we adopt for the purposes of this appeal.  *See* Trial Court

Opinion, 9/9/15, at 1-5.

Relevantly, in May 2013, DHS received a report from General

Protective Services that Mother was found passed out in a shopping mall

---

[1] DHS also included M.H. ("Father") in its Petition for involuntary termination of parental rights.  In May 2015, Father signed voluntary relinquishment petitions.

bathroom while with Child, who was two years old at the time. Mother was transported to the hospital, and it was determined that she had overdosed on heroin. Mother left the hospital that day against medical advice. DHS obtained an Order of Protective Custody, and Child was temporarily placed at Baring House before being placed with her paternal grandparents. On June 10, 2013, the Child was adjudicated dependent.

In the approximately 2 years that followed, Mother was incarcerated on three separate occasions. Mother refused to participate in visitations with Child while she was in prison. While Child was in the custody of DHS, Mother did not complete her Family Service Plan ("FSP") objectives and only visited Child 7 times.

In December 2014, DHS filed an Involuntary Termination of Parental Rights ("ITPR") Petition under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).

The trial court conducted a hearing on the Petition on May 11, 2015. As Mother was in prison awaiting trial, she participated via telephone. After hearing the evidence, the trial court terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Mother filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Mother raises the following questions for our review:

I. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights where such

- 2 -

determination was not supported by clear and convincing evidence under [] 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)?

II. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [C]hild as required by [] 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 4.

We review an appeal from the termination of parental rights in accordance with the following standard:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence

presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon Section 2511(a)(1) and (b), which state the following:

§ 2511. Grounds for involuntary termination.

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

- 4 -

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

> Parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (internal quotations and citations omitted).

In regard to incarceration and the preservation of parental rights, we have stated the following:

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during [her] incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of [her] ability, even in difficult circumstances.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted); *see also In re S.P.*, 47 A.3d 817, 828 (Pa. 2012). Further,

> [a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In her first claim, Mother asserts that the trial court erred in granting the ITPR Petition because DHS did not satisfy by clear and convincing evidence that her parental rights should be terminated under Section 2511(a). Mother's Brief at 9. As to the requirements of subsection (a)(1), Mother argues that she completed her FSP objectives by participating in parenting classes, anger management classes, and an in-patient drug and alcohol program while she was in prison. ***Id.*** at 12. Mother claims that she declined visitation with Child while she was in prison because she did not think it was in Child's best interests. ***Id.*** Mother also claims that she maintained communication with Child by sending letters and cards, and by asking Child's paternal grandparents and DHS about Child's welfare. ***Id.*** at 12-13.

The trial court appropriately applied Section 2511(a)(1) to this case, and we adopt its Opinion as to that subsection for the purposes of this appeal.[2] ***See*** Trial Court Opinion, 9/9/15, at 7-8; ***see also In re B., N.M.***, 856 A.2d 847, 858 (Pa. Super. 2004) (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life while mother performed all parental duties, and that father's wish to not have his "parental rights terminated was insufficient to protect

---

[2] Additionally, we note that Mother's only explanation for her conduct was that she "had a few bad years." N.T., 5/11/15, at 38.

those rights without acting affirmatively to foster a parental relationship with [c]hild during his incarceration.").

In her second claim, Mother argues that the trial court failed to give proper consideration of the effect of termination of her rights on Child's needs and welfare according to Section 2511(b). Mother's Brief at 14. Mother asserts that DHS social worker Molly McNeill's ("McNeill") testimony that Child had no bond with Mother was inappropriate because McNeill only supervised one visit. *Id.* at 15.

The trial court set forth the relevant law regarding Section 2511(b), and determined that it was in Child's best interest to terminate Mother's parental rights. *See* Trial Court Opinion, 9/9/15, at 12-13; *see also In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) (stating that "courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). Upon our review, the trial court appropriately applied Section 2511(b) to this case, and we adopt its Opinion for the purposes of this appeal. *See* Trial Court Opinion, 9/9/15, at 12-13.

Based upon the foregoing, the trial court did not err in granting the ITPR Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/28/2016</u>

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY

IN THE COURT OF COMMON PLEAS

IN RE: K.H., a Minor

:    **FAMILY COURT DIVISION**
:    **JUVENILE BRANCH-DEPENDENCY**
:    **CP-51-DP-0001129-2013**
:    **FN-002207-2013**
:    **Superior Court # 1724 EDA2015**

APPEAL OF:
S.K.D. a/k/a, S.G. a/k/a, S.K.G. a/k/a, S.D., Mother

## OPINION

### INTRODUCTION

S.K.D. a/k/a S.G. a/k/a, S.K.G. a/k/a S.D. ("Mother") appeals from the Decree and Order entered by this Court on May 11, 2015, granting the Petition filed by the Philadelphia Department of Human Services ('DHS") involuntarily terminating her parental rights to her minor female child, K.H. ("Child"). After a full Hearing on the merits, this Court found that clear and convincing evidence was presented to terminate the parental rights of Mother.[1] As discussed in greater detail below, the trial court terminated Mother's parental rights because Mother, during nearly two (2) years that the Child was in the custody of DHS, did not complete her Family Service Plan ("FSP") objectives, made little effort to be involved with her Child while incarcerated nor did she maintain a relationship with the Child during the brief time periods when she was not in

---

[1] Father's parental rights were also subsequently terminated pursuant to his signing voluntary relinquishments .

custody. Furthermore, the Child, who was 4 years old at the time of the hearing, was doing well in the pre-adoptive home of her paternal grandparents.

## TERMINATION HEARING

On December 30, 2014, DHS filed a Petition to Involuntarily Terminate Mother's Parental Rights. On May 11, 2015, this Court heard testimony on DHS's Petition to Terminate Mother's Parental Rights.

The City Solicitor first presented the testimony from D.H.S. social worker Molly McNeill who was found to be a credible witness by this Court. Ms. McNeill testified that on May 30, 2013 DHS received a General Protective Services ("GPS") report that Mother, while with her two year old daughter, was found passed out in a bathroom at the Gallery Shopping Mall in Philadelphia. (N.T. 5/11/2015, p. 11). Mother was transported to Thomas Jefferson Hospital by paramedics who initially feared that she was dead due to her being unresponsive. (N.T. 5/11/2015, p. 11). It was determined that Mother's condition was a result of a heroin overdose, however she left the hospital that same day against medical advice. (N.T. 5/11/2015, p. 22). The Child was placed temporarily at the Baring House and then with her grandparents. (N.T. 5/11/2015, p. 12).

On June 10, 2013, the Child was adjudicated Dependent. (DRO 6/10/2013, DHS Exhibit 2). On that date, Mother was ordered to take a forthwith drug screen and assessment with three random screens before the next court date. (DRO 6/10/2013). On June 10, 2013, Mother tested positive for marijuana. Mother was incarcerated in Berks

County Prison from June 21, 2013 until July 5, 2013. (N.T. 5/11/2015, p. 13). Initial FSP Objectives were established for Mother in July 2013. Mother was to engage in drug and alcohol treatment, maintain recovery and follow all recommendations for her recovery. (N.T. 5/11/2015, p. 12). Ms. McNeill testified that she got in contact with Mother on July 26, 2013, following her release from prison at which time Mother was offered supervised bi-weekly visits. (N.T. 5/11/2015, p.13). Mother failed to avail herself of the opportunity to visit with her Child. (N.T. 5/11/2015, p.29). A supervised visit was arranged for Mother and took place on August 10, 2013. (N.T. 5/11/2015, pp.13-14). Mother did not visit her Child again until December 2, 2013. (N.T. 5/11/2015, pp.13-14). Additionally, Ms. McNeill testified that Mother did not avail herself of any of the Court-Ordered drug screens since testing positive for marijuana in June 2013.

On February 5, 2014, Mother was again incarcerated in Lebanon County Jail. (N.T. 5/11/2015, p. 15). In June 2014, an FSP meeting was held in which Mother participated in by phone. (N.T. 5/11/2015, p. 23). At that time Ms. McNeill spoke with Mother by phone about her FSP objectives and mailed her a copy of her objectives. (N.T. 5/11/2015, p. 23). On September 12, 2014, Mother was released from Lebanon County Jail. (N.T. 5/11/2015, p.15). During her incarceration, Mother chose not to participate in any visitation with her Child. (N.T. 5/11/2015, pp.15-16). After being released from incarceration, Mother was admitted into an inpatient drug and alcohol detox program which she completed. Mother was then admitted to a rehabilitation program on October 29, 2015, but left against staff advice on November 6, 2014. (N.T. 5/11/2015, p.17.

Ms. McNeill also testified that upon her release from Lebanon County Jail in

September 2014, Mother was offered supervised visits with the Child at the agency. (N.T. 5/11/2015, p.16). Despite being offered this opportunity, Mother only visited her Child two (2) times in November 2014, two (2) times in December 2014 and one (1) time in January 2015. (N.T. 5/11/2015, p. 17).

Ms. McNeill testified that additional FSP objectives were added for Mother which included parenting, housing, visitation and to comply with Court Orders and conditions of probation. (N.T. 5/11/2015, p.18). Ms. McNeill stated that she never received any documentation that Mother had completed any drug and alcohol programs. (N.T. 5/11/2015, pp.17-18, 20). Additionally, Ms. McNeill testified that Mother had several different addresses and did not have stable housing. (N.T. 5/11/2015, p.18).

On January 12, 2015, Mother was again arrested and incarcerated for Aggravated Assault, Theft by Receiving Stolen Property, Driving Under the Influence, Fleeing Police and related offenses. (N.T. 5/11/2015, p.20).

Finally, Ms. McNeill testified that, in her opinion, the Child would not suffer any irreparable harm if Mother's rights were to be involuntarily terminated. (N.T. 5/11/2015, p.21). Ms. McNeill based her opinion upon the fact that the Child was well bonded with her grandparents who were meeting all of her needs. (N.T. 5/11/2015, pp.21-23). To the contrary, the Child had no bond with Mother who had only seen the Child seven times in nearly two (2) years. (N.T. 5/11/2015, pp.21-24). Based upon these facts, Ms. McNeill concluded that it would be in the Child's best interest to be adopted. (N.T. 5/11/2015, pp. 21-22).

Mother also testified via phone at which time she admitted that she never

4

completed a drug and alcohol program. (N.T. 5/11/2015, p.36). She testified that she was in an inpatient program for about 3 weeks but left because she was angry. (N.T. 5/11/2015, p.37). Furthermore, in reference to her Child's placement, Mother testified that she recognized that her daughter was where she needed to be and that her Child had stability with her grandparents. (N.T. 5/11/2015, pp. 38-39). At the end of the Hearing, this Court granted DHS's Petition to Terminate Parental Rights of Mother.

## APPELLANT'S ARGUMENTS

In her Statement of Matters Complained of on Appeal, Mother avers the following:

1. The trial court abused its discretion and committed legal error in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds that mother had evidenced a settled purpose of relinquishing a claim to her child or had refused or failed to perform parental duties under 23 Pa.C.S. §2511 (a)(1).

2. The trial court abused its discretion and committed legal error in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds under 23 Pa.C.S.§2511(a)(2).

3. The trial court abused its discretion and committed legal error in terminating mother's parental rights under 23 Pa.C.S.§2511(a)(5) because the Department of Human Services to prove by clear and convincing evidence the present and continued incapacity of mother to provide essential care necessary for her child's physical and mental well-being.

4. The trial court abused its discretion and committed legal error in terminating mother's parental rights under 23 Pa.C.S.§2511(a)(8) because the Department of Human Services to prove by clear and convincing evidence that the conditions which led to the child's placement continued to exist.

5

5. The trial court did err in terminating mother's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of showing that the best interest of the child was served by terminating mother's parental rights pursuant to Section 2511 (b) of the Adoption Act.

## STANDARD OF REVIEW

When reviewing an Appeal from a Decree terminating parental rights, an Appellate Court is limited to determining whether the decision of the Trial Court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the Trial Court's decision, the Decree must stand. Where a Trial Court has granted a Petition to Involuntarily Terminate Parental Rights, an Appellate Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a Trial Court's decision as to any one subsection under 23 Pa.C.S.A. §2511(a) in order to affirm a termination of parental rights. In re D.A.T., 91 A.3d 197 (Pa. Super. 2014).

### A. The Trial Court Properly Found that the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Mother's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8).

Termination of parental rights is governed by 23 Pa.C.S.A. §2511. In termination cases, the burden is upon DHS to prove by clear and convincing evidence that its asserted grounds for seeking termination of parental rights are valid. In the Interest of B.C., 36 A.3d 601, (Pa. Super. 2012). In the instant case, DHS's Petition asked the Court to terminate Mother's parental rights under §2511(a)(1),(2), (5), and (8). In light of Mother's failure for two (2) years to meet her FSP objectives, her decision not to be

6

involved in the life of the Child while incarcerated, and her minimal efforts to establish and maintain a relationship with the Child during the brief period time that she was not incarcerated, the Trial Court properly granted DHS's Petition to Terminate.

1.    **The Trial Court properly granted the Petition pursuant to 23 Pa.C.S.A §2511(a)(1).**

Section 2511(a)(1) provides that "parental rights may be terminated, if, for a period of at least six months, a parent *either* demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties." In the Interest of J.T., 983 A.2d 771 (Pa. Super. 2009).

The Trial Court found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform any parental duties. Mother was incarcerated for half of the Child's life during which times she chose not to be involved in her Child's life. Mother was offered supervised visits with her Child when she was not incarcerated. Despite being offered supervised visits at the agency, Mother only visited her Child seven (7) times.

Mother's refusal to parent was also demonstrated by the fact that Mother failed to comply with her FSP objectives. Mother failed to obtain suitable housing for her Child. Most importantly, Mother, by her own admission, never completed her major goal of completing drug and alcohol treatment. Mother completed a detox program but then left an inpatient rehabilitation program after 3 weeks because she was angry. Also, as stated above, Mother failed to participate in visitation with her Child. These minimal objectives

would have demonstrated Mother's interest in caring for her Child. However, Mother made little if any effort to fulfill these objectives.

Mother was incarcerated during half of the lifetime of the Child. While incarceration alone is not sufficient to support termination under any subsection, "parental responsibilities are not tolled during incarceration." In re: D.J.S., 1999 PA Super 214, 737 A.2d 283, 286 (Pa. Super. 1999). Further, "[a] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life." Adoption of Baby Boy A., 512 Pa 517, 517 A.2d 1244, 1246 (Pa. 1986). With respect to failure to perform parental duties under subsection (a)(1), as well as incapability under subsection (a)(2), the Court must inquire whether the parent, while incarcerated, utilized those resources available while he or she was in prison to maintain a close relationship with the child. Id.

Mother did not utilize any resource available to her to maintain a relationship with her Child. Mother's refusal to comply with her minimal FSP objectives and to maintain a relationship with the Child demonstrated incapacity, abuse, neglect, or refusal which caused the Child to be without essential parental care. See In re: Adoption of W.J.R., 2008 PA Super 131, 952 A.2d 680, 682-683 (Pa. Super. 2008)(affirming trial court's decision to terminate parental rights of incarcerated father).

Consequently, this Court concluded that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform her parental duties. For these reasons, the trial court found that DHS met its burden under 23 Pa.C.S.A. §2511(a)(1).

**2. The Trial Court properly granted the Petition to Terminate Parental Rights pursuant to 23 Pa.C.S.A. § 2511(a) (2).**

Section 2511(a) (2) requires that "repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S.A. §2511(a) (2). These grounds are not limited to affirmative misconduct; "to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties." In Re: N.A.M., 33 A.3d 95 (Pa. Super. 2011).

The Supreme Court, in In re Geiger, 459 Pa. 636, 331 A.2d 172, 174 (1975), enunciated the fundamental test in termination of parental rights under what is now 2511(a)(2) as requiring the Petitioner to prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." See also In re: Adoption of K.J., 938 Pa. Super at 1133.

The grounds for termination of parental rights under 23 Pa.C.S.A. 2511(a) (2), due to parental incapacity that cannot be remedied, are "not limited to affirmative misconduct." Unlike §2511(a)(1), §2511(a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. In re Z.P., 994 A.2d 1108 (Pa. Super. 2010).

Parental duty requires that the parent act affirmatively with a good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. In re E.M., 908 A.2d 297 (Pa. Super. 2006). In other words, a trial court can find an incapacity to parent by finding affirmative misconduct, acts of refusal to parent as well as an incapacity to parent. In re: S.C.B., 990 A.2d 762 (Pa. Super. 2010).

As discussed above, the Trial Court found that Mother evidenced both an incapacity and refusal to parent. The Mother's failure to maintain a relationship with the Child when the Child was in foster care demonstrated her incapacity and refusal to parent. In addition, there is no question that Mother's failure to maintain contact with the Child demonstrated that Mother left her young Child without parental care necessary for her physical or mental well-being.

Finally, the Court was not persuaded that Mother could resolve her dependency issues in the near future. Mother had never obtained suitable housing for the Child and was not receiving necessary drug and alcohol treatment. Further, Mother never demonstrated that she was able to provide proper parental care for her Child. At the time of the Termination Hearing, Mother was back in prison awaiting Trial on charges of Aggravated Assault, Theft by Receiving Stolen Property, Driving Under the Influence, Fleeing Police and related offenses.

A child's life may not be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting. In re: Adoption of M.E.P., 825 A.2d 1266 (Pa.Super. 2003). Mother has shown a "repeated and continued incapacity and

10

refusal" to parent the Child. This Court finds that Mother will not be able to resolve the dependency issues in the near future. Consequently, for all of the above reasons this Court terminated Mother's parental rights pursuant to §2511(a) (2).

### 3. The Trial Court properly granted the Petition to Terminate Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(5) and (a)(8).

Termination of Parental Rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. §2511(a)(5).

The requirements to terminate pursuant to section 2511(a)(8) are similar. "[T]o terminate parental rights pursuant to 23 Pa.C.S.A. §2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." In re: K.T.E.L., 983 A.2d 745 (Pa. Super. 2009).

The Court found clear and convincing evidence to terminate Mother's parental rights pursuant to Sections 2511(a)(5) and (a)(8) for the same reasons discussed above. In addition, the Court found it was in the Child's best interests to terminate Mother's rights because the Child was residing in a pre-adoptive home for nearly two (2) years and was bonded with her grandparents who were meeting all her needs.

11

**B. The Trial Court Properly Found That Termination of Mother's Parental Rights was in the Child's Best Interests and That DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).**

After the Trial Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the child pursuant to 23 Pa.C.S.A. §2511(b). In the Matter of the Adoption of C.A.W. and A.A.W., 453 Pa. Super. 277, 683 A.2d 911, 917-18 (Pa. Super. 1996). In terminating the rights of a parent, the Court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). "Section 2511(b) centers judicial inquiry upon the welfare of the child rather than the fault of the parent." In re K.Z.S., 946 A.2d 753 (Pa.Super. 2008). Further, "[o]ne major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re: C.T. and G.T.F., 944 A.2d 779 (Pa.Super. 2008).

The Child was two years old at the time of the hearing, and had resided in a pre-adoptive home with her grandparents nearly her entire life. Ms. McNeill testified that, in her opinion, the Child would not suffer any irreparable harm if Mother's rights were to be involuntarily terminated. Ms. McNeill based her opinion upon the fact that the Child was well bonded with her grandparents who were meeting all of her needs. To the contrary, the Child had no bond with Mother who was incarcerated and had only seen the Child seven times in nearly two years. Based upon these facts, this Court concluded that it would be in the Child's best interest to be adopted. Additionally, Mother acknowledged that her child was in a stable environment with her grandparents. Mother went so far as to say that when she got out of prison it was not her intention to remove

12

Child from the grandparents care.

Since the Child has spent approximately two (2) years in foster care, Mother has never cared for the Child, and the Child is in a nurturing and loving foster home, the developmental physical and emotional needs and welfare of the Child are best served by terminating Mother's parental rights.

## CONCLUSION

This Court finds that DHS met its burden by clear and convincing evidence for terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a) and (b) and for the foregoing reasons, this Court respectfully requests that the Decree and Order of May 11, 2015 terminating Mother's Parental Rights be Affirmed.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

9-9-15
DATE

13

## CERTIFCATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing Opinion is served upon the following parties by the manner as designated: **Family Court Delivery Mail Box .**


Neal Masciantonio, Esq.
1806 Callowhill Street
Philadelphia, PA 19130
Counsel for Mother, Appellant

Carlin Saafir, Esquire
Beggin & Greshes
1218 Chestnut St., Ste. 500
Philadelphia, PA 19107
Counsel for Father

Cynthia Keller, Esq.
Caitlin Dunston, Esq.
Phila Solicitor's Office
One Parkway, 1515 Arch St, 16th flr.
Philadelphia, PA 19102
DHS Counsel

Regina Tuchinsky, Esq.
Patricia A. Korey, Esq.
Defenders Association
Child Advocacy Unit
1441 Sansom St
Philadelphia, PA
For Minor Child


_____
**ALLAN L. TERESHKO, Sr. J.**

9.9.2015
**DATE**